**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

JOHN DOE,

Petitioner,

v.

WARDEN, FOLKSTON ICE PROCESSING CENTER,

Respondent.

CIVIL ACTION NO.: 5:25-cv-176

**REPORT AND RECOMMENDATION**

Petitioner John Doe ("Doe") filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Docs. 1, 1-4. The Court authorized Doe to proceed under a pseudonym. Doc. 10. Respondent filed an Answer-Response and a Motion to Dismiss. Docs. 9, 16. Doe filed a Response in opposition to the Motion. Doc. 17. For the following reasons, I **RECOMMEND** the Court **DENY in part** Respondent's Motion to Dismiss and **GRANT in part** Doe's § 2241 Petition, docs. 1, 16. Specifically, the Court should deny the portion of the Motion to Dismiss concerning 8 U.S.C. § 1231(a)(6) and Zadvydas and grant the portion of Doe's Petition in which he seeks his release from detention based on violations of § 1231(a)(6) and Zadvydas v. Davis. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Should the Court adopt these recommendations, I further **RECOMMEND** that the Court order Respondent or other ICE officials to release Doe from ICE custody within seven days of adoption.

## BACKGROUND

Doe contends that he has been detained since July 2024. Doc. 1-4 at 2.[1] The parties agree that an immigration judge granted Doe relief under the Convention Against Torture based on the finding that Doe could not be removed to his home country but was still subject to removal. Doc. 1-4 at 2–3; Doc. 16 at 2. Neither party appealed the immigration judge's order, and Doe became subject to a final order of removal on March 8, 2025. Doc. 16 at 2. Thus, Doe is detained under 8 U.S.C. § 1231. Doc. 1-4 at 2; Doc. 16 at 1.

Doe seeks, among other things, his immediate release or, in the alternative, allowance of discovery into the likelihood of his removal in the reasonably foreseeable future. Doc. 1-4 at 30. Respondent asserts that when the removal order became final, a process of searching for "an alternative country to which Petitioner could be removed" began. Doc. 16 at 2. As of the date of the Motion, December 23, 2025, Immigration and Customs Enforcement ("ICE") officials submitted requests "to three countries [to accept Doe], each of which has denied the request." Id. On February 19, 2026, Respondent filed a status report, stating that there are "no updates to the information previously submitted to the Court related to third-country removal." Doc. 19 at 1 (citing Doc. 9-1). Doe recently advised the Court that he is still in ICE detention and that ICE officials have not conducted any required 90-day reviews since February 19, 2026. Doc. 22.

## DISCUSSION

Under the Immigration and Nationality Act, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During that period, the Attorney General must detain the alien. Id. § 1231(a)(2). However, any continued detention under that statute must not be indefinite. In

[1] Because Doe is proceeding pseudonymously, the Court omits many of the specific factual details of his background, detention, and immigration proceedings.

Zadvydas v. Davis, the United States Supreme Court held the indefinite detention of aliens raises serious constitutional concerns. 533 U.S. 678, 701 (2001). Thus, once an order of removal becomes final, ICE officials should make every effort to remove the alien within a reasonable time. Id. The Supreme Court found six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id.

However, this does not mean that every alien detained longer than six months must be released. Id. Rather, to state a claim for habeas relief under Zadvydas, an alien must: (1) demonstrate he has been detained for more than six months after a final order of removal; and (2) "provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002); see also D.A.F. v. Warden, Stewart Det. Ctr., No. 4:20-CV-79, 2020 WL 9460467, at *2 (M.D. Ga. May 8, 2020) (same). If a petitioner makes these showings, the burden shifts to the government to respond with evidence to rebut that showing. Zadvydas, 533 U.S. at 701.

Respondent concedes that the presumptively reasonably six-month period has expired and that the "first showing [under Zadvydas] is met." Doc. 16 at 6. The question, then, is whether Doe has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. Respondent asserts that Doe has provided no factual support for his contention that there is no significant likelihood of removal. Doc. 16 at 7. Respondent states that "ICE is working diligently . . . to identify countries who may accept Petitioner[,]" Id.

The Court agrees that Doe has borne his burden to show no significant likelihood of removal in the reasonably foreseeable future. Doc. 17 at 3–4. Respondent has not rebutted this showing. The record demonstrates that Doe has been detained for 17 months from the date

Doe's order of removal became final, despite DHS's purported diligence in trying to locate another country to which Doe can be removed. See Doc. 22. Respondent has not shown that future efforts are likely to be any more successful than attempts over the last 17 months, and Respondent has not shown that those efforts will be successful in the near term.

Doe notes that the facts in this case are not meaningfully distinguishable from facts that this Court has already found support a Zadvydas claim. See Doc. 17 at 3–4. In Ambrosi v. Warden, the Court confronted a situation in which the petitioner "ha[d] been in post-removal detention for much longer than six months' time," and he could not be removed to his own country. No. 5:25-cv-13, 2025 WL 2779210, at *3 (S.D. Ga. Aug. 18, 2025). There, as here, "[b]y Respondent's own admission, ICE has been unable to find a county to where [the petitioner] can be removed. Indeed, Respondent asked three countries to accept [the petitioner], and all three denied the request." Id. Moreover, the period during which ICE was "diligently working" to identify countries that might accept the petitioner in Ambrosi was considerably shorter than the search period in this case. Ambrosi is hardly a unique decision for rejecting generalized assertions of efforts to secure removal. See, e.g., Alian C.-L. v. Mullin, No. 26-cv-2335, 2026 WL 1266167, at *3 (D. Minn. May 8, 2026) ("Courts regularly refuse to find that the Government meets its burden under Zadvydas when the Government offers little more than generalizations regarding the likelihood that removal will occur to a third county," and collecting cases (internal quotation marks and citations omitted)). Thus, the facts in this case are, if anything, stronger support than those in Ambrosi for the conclusion that there is no significant likelihood of Doe's removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701. Thus, the Court should **DENY** this portion of Respondent's Motion to Dismiss and order

Doe's release from ICE's custody.[2] As this recommendation, if adopted, will dispose of Doe's Petition, I decline to address the remaining grounds of Respondent's Motion to Dismiss.[3]

## CONCLUSION

Based on the foregoing I **RECOMMEND** the Court **DENY in part** Respondent's Motion to Dismiss and **GRANT in part** Doe's § 2241 Petition, docs. 1, 16. Specifically, the Court should grant the portion of Doe's Petition in which he seeks his release from detention based on violations of 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis and deny the portion of the Motion to Dismiss concerning § 1231(a)(6) and Zadvydas. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Should the Court adopt these recommendations, I further **RECOMMEND** that the Court order Respondent or other ICE officials to release Doe from ICE custody within seven days of adoption.

---

[2] As the Court noted in Ambrosi, 8 C.F.R. § 241.4(i)(7) provides a "supplemental review procedure" for evaluating the continued detention of individuals whose removal is not reasonably foreseeable. 2025 WL 2779210, at *3. Such continued detention requires assertion of "grounds such as national security or public health concerns or by showing by clear and convincing evidence before an immigration judge that the alien is 'specially dangerous.'" Id. (citing 8 C.F.R. § 241.4(b)–(d), (f)). There, as here, "ICE has not justified [the petitioner's] continued detention based on national security or public health concerns or by showing [he] is 'specially dangerous.'" Id.; see also, generally, doc. 17. "Thus, the Zadvydas decision and § 241.4 provide [Petitioner] with his requested relief." 2025 WL 2779210, at *3.

[3] Respondent also challenges the propriety of naming others as Respondents, the sufficiency of the pleading, and the merits of several alternative claims. Doc. 16 at 2–4, 8–11. Doe opposes these arguments. Doc. 17 at 4–13. As to the identity of the proper Respondents, the Warden of Folkston is the proper Respondent on the Zadvydas claim. Doc. 16 at 2–3; Doc. 17 at 6. Since I recommend that the Court grant Doe's Zadvydas claim and to order Respondent release Doe from detention, the Court need not consider the relative merits of any other or additional arguments. I do mention Respondent's contention regarding Doe's Petition being a shotgun pleading. Doc. 16 at 3–4. This Court has rejected dismissal on those grounds where any such defect has not "prevented [the respondent] from understanding the relevant facts or the core request for habeas relief." Villa v. Normand, Case No.: 5:25-cv-89, 2025 WL 3188406, at *5 (S.D. Ga. Nov. 14, 2025). Even if there were pleading defects here, dismissal would not be appropriate, and where the core request is adequate, requiring amendment would merely "delay resolution of this matter . . . ." Id. The same outcome should apply here.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA